# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE LUIS QUINTERO CONCEPCION,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION FACILITY,<br><br>Respondent. | Case No. 1:26-cv-07969-JLT-SAB-HC<br><br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND IMMEDIATELY RELEASE PETITIONER |

Petitioner is an immigration detainee proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who was paroled into the United States on March 27, 2006. On November 8, 2007, Petitioner adjusted his status to that of a lawful permanent resident. (ECF No. 10-1 at 3.[1]) On November 13, 2017, an immigration judge ("IJ") ordered Petitioner removed to Cuba. (Id. at 60.) Petitioner was released on an Order of Supervision ("OSUP"). (ECF No. 1 at 3.)

In September 2025, immigration authorities encountered Petitioner at the Florida Department of Corrections in Miramar, Florida after he was convicted of voyeurism. On or about

[1] Page numbers refer to the ECF page numbers stamped at the top of the page.

September 30, 2025,[2] U.S. Immigration and Customs Enforcement ("ICE") revoked Petitioner's supervision and detained him. (ECF No. 1 at 2; ECF No. 10-1 at 63–64, 67–68.)

On September 30, 2025,[3] October 17, 2025, and January 11, 2026, Petitioner was notified of ICE's intention to remove him to Mexico, and refused to sign the notification. (ECF No. 10-1 at 65, 70, 72.) On February 2, 2026, Petitioner was served with a Warning for Failure to Depart. (Id. at 74–75.) On February 28, 2026, Petitioner was notified this his file custody review was scheduled for March 27, 2026. (Id. at 77–78.)

On May 11, 2026, Petitioner filed his first habeas petition in the United States District Court for the Middle District of Florida, which denied the petition without prejudice to "refiling a new petition should his current detention be unimpeded and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future." (ECF No. 10-1 at 80, 87.)

On June 18, 2026, Petitioner was served with a Notice of Failure to Comply Pursuant to 8 CFR 241.4(g). (ECF No. 10-1 at 89–90.) On June 20, 2026, ICE issued a decision to continue Petitioner's detention. (Id. at 91–93.)

On July 2, 2026, Petitioner filed his second habeas petition in the United States District Court for the Middle District of Florida, which again denied the petition without prejudice to refiling a new petition should his current detention be unimpeded and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. (ECF No. 10-1 at 95, 101–03.)

On July 25, 2026, Petitioner was served with a Notice of Failure to Comply Pursuant to 8 CFR 241.4(g). (ECF No. 10-1 at 98–99.) On September 1, 2026, Petitioner was served with a notice informing him that his custody status would be reviewed on September 8, 2026. (Id. at 105–08.)

On September 28, 2026, Petitioner filed the instant petition for writ of habeas corpus in this Court. (ECF No. 1.) On October 21, 2026, Respondent filed a response. (ECF No. 10.)

---

[2] The notice of revocation of release was signed by the Field Office Director on September 30, 2025, but the proof of service states that the notice was served on Petitioner on September 28, 2025. (ECF No. 10-1 at 65.)

[3] The notice of removal to Mexico is dated September 30, 2025, but the certificate of service states that the notice was served on Petitioner on September 28, 2025. (ECF No. 10-1 at 63–64.)

## II.

## DISCUSSION

The Court finds that issuance of findings and recommendation is appropriate despite the time for Petitioner to file a reply to Respondents' response having not yet expired.

### A. Zadvydas

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Section 1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Avilez, 69 F.4th at 530–31. "After entry of a final removal order and during the 90–day removal period . . . aliens must be held in custody." Zadvydas v. Davis, 533 U.S. 678, 683 (2001) (citing 8 U.S.C. § 1231(a)(2)).

> A special statute authorizes further detention if the Government fails to remove the alien during those 90 days. It says:
>
> > "An alien ordered removed [1] who is inadmissible ... [2] [or] removable [as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision ...."

Zadvydas, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6) (1994 ed., Supp. V)).

In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under § 1231(a)(6).

Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, after a presumptively reasonable "6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. at 701. "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id. "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id.

**B. 8 C.F.R. § 241.13(i)(1)**

> Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.

8 C.F.R. § 241.13(i)(1).

"The plain language of the regulation indicates that the continued detention of a noncitizen who violates the conditions of their release is authorized only for an additional six months." Tran v. Warden, California City Corr. Ctr., No. 1:26-CV-04098-DAD-CKD (HC), 2026 WL 2099295, at *3 (E.D. Cal. July 21, 2026). Given that Petitioner has been detained for over six months, "his criminal history does not automatically justify his present detention" and the Court recommends finding that Petitioner's continued detention is no longer authorized by 8 C.F.R. § 241.13(i)(1). Pedro V.L. v. Warden, No. 1:26-CV-05261-JLT-EGC (HC), 2026 WL 2607611, at *1 (E.D. Cal. Sept. 3, 2026) (finding continued detention for more than eight months not authorized by § 241.13(i)(1)).

**C. Applicability of 8 U.S.C. § 1231(a)(1)(C)**

"[T]he removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal." Johnson v. Guzman Chavez, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(C)). To the extent Respondents argue that the removal period is extended under 8 U.S.C. § 1231(a)(1)(C) because Petitioner refuses to cooperate with removal efforts to Mexico, "this District routinely rejects such argument regarding 'failure to cooperate' with removal to a third country because there is no obligation for such cooperation." S.R. v. Warden of the California City Corr. Ctr., No. 1:26-CV-03587-TLN-CSK, 2026 WL 2676077, at *3 (E.D. Cal. Sept. 11, 2026) (collecting cases). See Obando Vargas v. Blanche, No. 1:26-CV-05343-DAD-AC (HC), 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) ("[P]etitioner has no removal order to Mexico. Respondents' argument appears to be that, because petitioner is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to, he may be detained indefinitely. This argument is frivolous and the court admonishes respondents' counsel to avoid wasting the court's time and resources with such arguments in the future."); Dopico Pereira v. Warden of the California City Immigr. Processing Ctr., No. 1:26-CV-05007-NW, 2026 WL 2552737, at *2 (E.D. Cal. Aug. 30, 2026) (Argument "that Petitioner's refusal to consent to removal to Mexico has the effect of extending his removal period" "has been widely rejected throughout this circuit, and the Court does the same here."). Based on the foregoing, the Court recommends finding that 8 U.S.C. § 1231(a)(1)(C) is not applicable.

**D. Likelihood of Removal**

"[T]he burden-shifting framework from *Zadvydas* does not apply here" because "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*" but rather "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (internal quotation marks omitted) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was

previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

"The regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed." Yan-Ling X., 813 F. Supp. 3d at 1163 (citing Nguyen, 788 F. Supp. 3d at 149; Escalante, 2025 WL 2206113, at *3). "A non-citizen subject to a final order of removal who is released on OSUP may be re-detained 'if, on account of changed circumstances, the Service determines [ ] there is a significant likelihood that the alien may be removed in the reasonably foreseeable future.'" Huang v. Albarran, 818 F. Supp. 3d 1154, 1162 (E.D. Cal. 2026) (alteration in original) (quoting 8 C.F.R. § 241.13(i)(2)). "On numerous occasions, this Court has found that under 8 C.F.R. § 241.13(i)(2), when ICE revokes the release of a noncitizen who has been ordered removed to effectuate their removal, it is ICE's burden to show a significant likelihood of removal." Id. at 1160–61. "The phrase 'significant likelihood' requires something more than a mere possibility that removal will occur. Evidence that 'there is at least some possibility that' the designated country of removal 'will accept Petitioner at some point ... is not the same as a significant likelihood that [he] will be accepted in the reasonably foreseeable future.'" Yan-Ling X., 813 F. Supp. 3d at 1164 (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)).

"As this Court and other judges in this District have pointed out, though DHS may have an informal arrangement with the Mexican government to allow third country removals to Mexico, Mexico only accepts individuals who consent to be removed there." Pedro V.L., 2026 WL 2607611, at *1 (emphasis in original). Therefore, "removal based on the standing agreement between the United States and Mexico is not reasonably foreseeable when the noncitizen does not consent to the removal." Ramirez Outerino v. Warden, Mesa Verde ICE Processing Ctr., No. 1:26-CV-05326-DJC-JDP, 2026 WL 2327873, at *2 n.1 (E.D. Cal. Aug. 11, 2026). Here, Petitioner has refused consent to removal to Mexico multiple times. (ECF No. 10-1 at 65, 70, 72.) Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future.

> The record is devoid of any evidence suggesting Mexico will accept Petitioner in the absence of his consent, and Petitioner's repeated refusal to cooperate with his removal to Mexico evidences his non-consent. Therefore, even assuming the traditional burden shifting framework from *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001), applies, the facts here satisfy Petitioner's burden to show there is good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents fail to rebut that showing.

Pedro V.L., 2026 WL 2607611, at *1.

Based on the foregoing, the Court recommends finding that Petitioner is entitled to habeas relief on Grounds One and Four of the petition and immediate release.[4] See Pedro V.L., 2026 WL 2607611, at *1 ("Though the Court has concerns about Petitioner's criminal history, under these circumstances, binding Ninth Circuit authority directs that Petitioner be released subject to appropriate conditions.").

**III.**

**RECOMMENDATION**

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED on Grounds One and Four;
2. Petitioner be immediately released, subject to appropriate conditions of supervision; and
3. Respondents be enjoined from re-detaining Petitioner unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days

[4] In light of this conclusion, and given that there is nothing in the record suggesting Respondents are contemplating removal to a third country other than Mexico and removal to Mexico is not likely to occur without Petitioner's consent, the Court declines to address Petitioner's third country removal claims.

after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 27, 2026**

STANLEY A. BOONE
United States Magistrate Judge